597 So.2d 529 (1992)
Linda B. FLYNN
v.
STATE of Louisiana DEPARTMENT OF PUBLIC SAFETY.
No. CA 91 0037.
Court of Appeal of Louisiana, First Circuit.
March 6, 1992.
Writ Granted May 22, 1992.
*530 Douglas A. Allen, Jr., Metairie, for plaintiff-appellant.
Paul Schexnayder, Baton Rouge, for defendant.
Before COVINGTON, C.J., and LeBLANC and WHIPPLE, JJ.
*531 COVINGTON, Chief Judge.
This appeal by plaintiff-appellant, Linda B. Flynn, seeks a reinstatement of her driving privileges, which were suspended by the Department of Public Safety and Corrections (Department) following her arrest on November 4, 1989, for DWI. Plaintiff timely requested an administrative hearing, which was held on February 13, 1990, and resulted in an affirmation of the Department's proposed suspension. She then filed a petition for reinstatement of driving privileges and appeal in district court, stating that she was entitled to a summary hearing and "a de novo factual determination." After the district court determined that she was entitled to judicial review of the administrative record rather than a trial de novo, and affirmed the administrative decision to suspend her driving privileges for ninety days, plaintiff filed this appeal.
For the reasons hereinafter stated, we affirm the judgment of the district court.
On appeal, Ms. Flynn argues the following assignments of error: (1) the trial court erred when it denied her a trial de novo and confined its review to the administrative record; (2) the suspension of her driving privileges was improper because she was effectively denied the opportunity to obtain an independent blood/alcohol test, in violation of LSA-R.S. 32:664(B), while she was held at the St. Tammany Parish jail pending bail; and (3) there was sufficient evidence in the record to show that the breath test results used by the Department to suspend her license "could be inaccurate, and, therefore, unreliable...." We will address each of these issues.

TRIAL DE NOVO
Appellant argues that she was entitled to a trial de novo in district court on the appeal from the administrative hearing under the terms of LSA-R.S. 32:668(C) and 32:414(F)(4).
LSA-R.S. 32:668 sets forth the procedure to be followed in the event a license or permit to drive is suspended, revoked, or denied to any person suspected of drunk driving by the Department. It provides in part as follows:
A. Upon suspending the license or permit to drive or nonresident operating privilege of any person or upon determining that the issuance of a license or permit shall be denied to the person, the Department of Public Safety and Corrections shall immediately notify the person in writing and upon his request shall afford him an opportunity for a hearing in the same manner and under the same conditions as is provided in R.S. 32:414 for notification and hearings in the case of suspension of licenses, except that the scope of such a hearing for the purposes of this Part shall cover the following issues:
(1) Whether a law enforcement officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle upon the public highways of this state while under the influence of either alcoholic beverages or any abused or illegal controlled dangerous substance as set forth in R.S. 40:964.
(2) Whether the person was placed under arrest.
(3) Whether he was warned by the officer as provided in R.S. 32:661(C).
(4) Whether he voluntarily submitted to an approved chemical test and whether the test resulted in a blood alcohol reading of .10 percent or above by weight of alcohol in the blood.
(5) Whether he refused to submit to the test upon the request of the officer.
(6) Such additional matters as may relate to the reasonableness of a suspension of the license.
. . . . .
C. After a person has exhausted his remedies with the department, he shall have the right to file a petition in the appropriate court for a review of the final order of suspension or denial by the Department of Public Safety and Corrections in the same manner and under the same conditions as is provided in R.S. 32:414 in the cases of suspension, revocation, and cancellation of licenses. The court in its review of the final order of *532 suspension or denial by the Department of Public Safety and Corrections may exercise any action it deems necessary under the law including ordering the department to grant the person restricted driving privileges where appropriate as provided in Subsection B.
The reference to R.S. 32:414 in sub-parts (A) and (C) is to the comparable statute for the procedure following withdrawal of driving privileges after a conviction for driving while intoxicated or some other driving offense, such as manslaughter. In pertinent part, LSA-R.S. 32:414(F)(4) provides as follows:
Any person denied a license or whose license has been suspended, cancelled, or revoked shall have the right to file an application within thirty days thereafter for a hearing before the district court of the parish in which the applicant resides. That court is vested with jurisdiction to set the matter for hearing in open court upon ten days' written notice to the department and thereupon to determine whether the person is entitled to a license or is subject to suspension, cancellation, or revocation of license under the provisions of this Chapter. Appeal from the decision of the district court may be taken to any court of competent appellate jurisdiction.
Appellant argues that the language in § 414(F)(4), "hearing in open court," clearly indicates that the introduction of evidence and the calling of witnesses was contemplated by the legislature, including the right to cross-examine adverse witnesses. She cites the case of Jaubert v. Department of Public Safety, 323 So.2d 212 (La. App. 4th Cir.1975), for the proposition that the Department, which has the burden of proof in this action, may not satisfy it by relying on the sworn report of a police officer. She states that since the arresting officer herein did not appear at the administrative hearing, and therefore, never testified, the rationale of Jaubert should apply and she should have been granted a trial de novo in district court.[1]
We disagree with appellant's arguments, and find that her reliance on the Jaubert case is misplaced. In Jaubert, the motorist was arrested and refused to take a sobriety test. His license was suspended for six months by the Department because of his refusal, pursuant to LSA-R.S. 32:667, and he thereafter requested an administrative hearing. The arresting officers did not testify at this hearing, but an unsworn arrest report and the arresting officers' conclusionary report under § 667 were submitted into evidence. The latter contained the statement: "That he [they] had reasonable grounds to believe that Ralph D. Jaubert had been driving or was in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages. * * *" (Emphasis added by Jaubert court.) The statement contained no specific factual details which might support the officers' conclusion that they had "reasonable grounds" to believe the motorist was driving while intoxicated.
In remanding the matter back to district court for a determination whether the officers had "reasonable grounds" to believe that Mr. Jaubert was driving while intoxicated, the Fourth Circuit stated:
Neither LSA-R.S. 32:414 nor LSA-R.S. 32:668 places any restriction or limitation on the scope of the original judicial hearing therein granted. The [district] court *533 is not restricted to a review of the findings of the Department. This conclusion is not inconsistent with the Administrative Procedure Act, LSA-R.S. 49:951 et seq....
323 So.2d at 214.
The court then concluded,
The court hearing that we conclude is required by LSA-R.S. 32:414, subd. E does not allow for the Department to carry its burden of proving reasonable grounds solely on the basis of a sworn report of a law enforcement officer which contains the statutory conclusionary statement that `* * * he had reasonable grounds * * *.' [Emphasis original.] 323 So.2d at 215.
Factually, the case sub judice is readily distinguishable from Jaubert. Appellant did not refuse to take a sobriety test; she submitted to breath analysis, which resulted in a reading of a blood alcohol content of.111 percent. The sworn affidavit of the arresting officer herein stated that the arrest was made upon the following reasonable grounds to believe that Ms. Flynn was driving while under the influence of alcohol: that she was driving 94 miles per hour in a 55 mile-per-hour speed zone, that her speed was inconsistent, and that upon personal contact with the driver, it was noted that she smelled of alcoholic beverage, was swaying on her feet, that her eyes were blood shot, and that her speech was slurred. Thus, there was sufficient factual specificity in the sworn statement of the arresting officer for the hearing officer to determine whether "reasonable grounds" existed for the arresting officer to believe appellant was driving while under the influence of alcohol, unlike the situation in Jaubert.
Moreover, we disagree with our brethren in the Fourth Circuit on the issue of whether judicial review of the Department's suspension of driving privileges under LSA-R.S. 32:668 means a trial de novo. The language of § 668(C), "... for a review of the final order of suspension or denial ..." and "[t]he court in its review of the final order of suspension or denial ...," is in no way suggestive of a de novo trial. Nor is the reference to § 414 suggestive of a de novo trial for § 668 purposes. The "hearing in open court" language in § 414 is merely in contrast to a hearing in chambers, which is allowable under several specific statutes in other areas of our law (see, for example, LSA-R.S. 9:302 allowing hearings in chambers in certain divorce proceedings).
The legislature did not expressly provide for a trial de novo in this instance, and in the absence of a special statute, a review of the record of the administrative agency is the type of judicial review that takes place. See, Pardue v. Stephens, 558 So.2d 1149 at 1159-1160 (La.App.1st Cir. 1989) and the discussion therein regarding specific instances of statutes providing for trial de novo as the means of judicial review of administrative decisions. This rationale is even more strongly applicable in the instance of a § 668 judicial review than it is in the instance of a § 414 review; under § 668, certain detailed findings at the administrative hearing are mandated by the statute before the suspension may be upheld. However, under § 414, the suspension of driving privileges is automatic, without a formal hearing by the Department. The Department may conduct an "investigation," but is not required to do so (Subpart E). The first opportunity for a hearing which a person has following the suspension of his driving privileges under § 414 is in district court. Yet this court has held that the lack of a hearing in such an instance does not offend due process, which is satisfied by the judicial review provided in the statute. Price v. State of Louisiana, Department of Public Safety, License Control and Driver Improvement Division, 325 So.2d 759 (La.App.1st Cir. 1976). Where the legislature has mandated a formal, detailed administrative hearing and specified the scope of that hearing, as it has in § 668, and has not clearly provided for a de novo judicial review of that agency's determination, we do not perceive that the legislature intended a de novo review by the district court. Due process is satisfied here by the formal administrative hearing, which may be followed *534 by a review of the record in district court.
Additionally, appellant has overlooked provisions of the Louisiana Administrative Procedure Act which would govern this appeal.
LSA-R.S. 49:964(E) expressly provides that prior to the hearing in district court for review of an agency adjudication, a party may apply to the district court for leave to present additional evidence if "it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency...." The court then may order that the additional evidence be taken before the agency, which may in turn modify its findings and decision.
The record is devoid of any indication that appellant made any effort to do so. In the absence of an effort by appellant to exhaust all administrative remedies, her argument that she is entitled to a de novo treatment in district court so that she may present any evidence not presented at the administrative hearing is unpersuasive.
Thus, we hold that appellant was not entitled to a judicial review by a trial de novo. This assignment of error has no merit.

REQUEST FOR INDEPENDENT BLOOD TEST
Appellant contends in this assignment of error that the decision of the hearing officer should be reversed because she was misinformed about her right under the provisions of LSA-R.S. 32:664(B) to obtain an independent test to reveal her blood alcohol content, while being held at the St. Tammany Parish jail. She states that, although she had requested an independent blood test while being booked, she was told that she would have to wait until she was released on bail to obtain such a test at the hospital. Ms. Flynn testified at the hearing that the booking process took about an hour and a half, and that immediately thereafter, she went to the hospital to obtain the blood work.
However, after reviewing the transcript of the administrative hearing, we find that the record supports the finding that Ms. Flynn was advised of her right to an independent test and was afforded the opportunity to obtain this test within a reasonable length of time after the arrest. She did in fact offer the results of this independent test as evidence at the hearing. In the absence of any evidence to indicate otherwise in the record, we do not find that her wait of approximately an hour and a half was unreasonable.
Moreover, even if we were to hold that she was denied her rights under this statute, the statute itself provides for such an eventuality. It reads:
The person tested may have a physician or a qualified technician, chemist, registered nurse or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer. After being advised of this right as provided in R.S. 32:661(C), he shall be given the opportunity to telephone and request the qualified person to administer such test. The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer.

[Emphasis added.]
Obviously, the legislature considered the possibility that a person tested at the direction of a law enforcement officer might be unable to obtain a desired independent test for analysis of alcohol content. Equally obvious is the plain legislative intent that such an inability would not effect the admissibility of the test obtained by law enforcement personnel. Therefore, if the test obtained by law enforcement personnel indicates a blood alcohol content high enough to meet the statutory presumption of intoxication and is otherwise admissible, then the prescribed consequences must necessarily follow.
This assignment of error has no merit.

*535 ACCURACY OF BREATH ANALYSIS
Appellant contends that there was sufficient evidence before the administrative hearing officer to suggest that the breath test results were inaccurate, and therefore, unreliable as the basis for suspending her driver's license. She argues that since she is asthmatic and was being treated with inhalants which pump an alcohol-based mist into her alveolar sacs, the breath analysis was not a true reading of her blood alcohol content. She states that she was able to obtain a blood test one hour and forty minutes after the breath test in question, and that the blood test showed her blood alcohol content to be .065 percent. She argues that the .065 level is inconsistent with the .111 reading because the body does not metabolize alcohol that quickly.
When a motorist asserts an infirmity in a chemical test for intoxication, the results of which have resulted in a suspension of his driving privileges, that person must face the requirement of proving his allegations. See, Bizette v. State of Louisiana Department of Public Safety, 583 So.2d at 878. Thus, it was incumbent on the plaintiff to prove the inaccuracy of the breath test.
At the administrative hearing, appellant testified that she told the arresting officer she wished to have a blood test in addition to the breath test because she felt the breath test would be inaccurate, due to the inhalers she used, which were suspended in alcohol. She never stated at what point in time she had used her inhalers prior to her arrest and test, or even whether she had used her inhalers that day at all. Appellant offered as evidence a certified record of Highland Park Medical Center, which states,
GENERAL CHEMISTRY 65 H MG/DL ALCOHOL
The record is dated November 5, 1989, and the time listed as "01:35." She also offered as evidence what appears to be pharmaceutical circulars for Atrovent, Azmacort, and Maxair, which are described on the circulars as inhalers. She did not testify as to the source of these circulars or offer any details about her use of these inhalers or when and by whom they had been prescribed for her. Our review of these circulars reveals no indication of alcohol present in the medication that would be comprehendible to a non-chemist; nor do the warnings as to possible side effects include any of the symptoms typically associated with alcohol consumption. However, at the hearing, appellant did admit to having a glass of wine with dinner and a beer right before crossing the Causeway.
Plaintiff offered no expert testimony regarding the actual alcohol content of the inhalers or what possible effect the use of them might have on breath analysis for alcohol content. She offered no testimony or evidence regarding the rate at which alcohol is metabolized in the blood to substantiate her argument that the blood test results contradicted the breath test results.
After a thorough consideration of this matter, we find that plaintiff failed to carry her burden of proof on the issue of the accuracy of the test results. Nor are we persuaded by her argument that a remand to the district court for a de novo hearing is necessary so that the judge can accord a greater weight to her evidence than did the administrative hearing officer. The hearing officer was correct in finding that, based on the weight of the evidence, the arresting officer had reasonable grounds to believe plaintiff was operating her motor vehicle while under the influence of alcohol, and that the proposed suspension of driving privileges by the Department was proper based on the breath analysis results.
For these reasons, the decision by the district court judge affirming the Department's suspension of plaintiff-appellant's driving privileges for a period of ninety days is affirmed. Costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.
LeBLANC, J., concurs.
NOTES
[1] The record herein indicates that the Department filed a motion to limit judicial review to the administrative record, citing an unpublished writ granted by this court, Dupuy v. Department of Public Safety and Corrections, CW 89 0721, decided May 15, 1989, wherein this court had ordered that judicial review by the district court be limited to a review of the administrative record, rather than a trial de novo. This same unpublished writ action was urged by the Department in Bizette v. State of Louisiana Department of Public Safety, 583 So.2d 875 (La.App.1st Cir.1991), as noted by the author of that opinion for this court. In both instances, the Department was in violation of Uniform Rules-Courts of Appeal 2-16.3, which prohibits citing or even referring to unpublished opinions in briefs or arguments before this court. However, since the reproduction of the language of the Dupuy writ within the Bizette opinion has effectively published the writ (see, 583 So.2d at 876, n. 1), and since this issue is squarely raised by this appeal, we will discuss the rationale of Dupuy.